# EXHIBIT A

I hereby certify the foregoing
instrument is a correct copy of
the original on file in this office.

DATED 10-23-07

ALEX CALVO, CLERK    SUPERIOR COURT OF CALIFORNIA

By _____ Deputy    COUNTY OF SANTA CRUZ

|  |  |
|---|---|
| | Case No. 5SZ102332 |
| PEOPLE OF THE | |
| STATE OF CALIFORNIA | SETTLED STATEMENT |
| vs. | OF DECISION AND CERTIFICATION |
| | OF SAME |
| ELIJAH KAI CROWELL, | |
| Defendant. | |

The above-captioned case came before Referee Kim Baskett at trial on December 13, 2005. The defendant, ELIJAH KAI CROWELL represented by Attorney David Meyberg, was present. Deputy City Attorney for the City of Santa Cruz, Heather Lenhardt, was present with the citing officer John Alexiou, an officer employed by the City of Santa Cruz Parks and Recreation Department.

Defendant was cited for violation of City of Santa Cruz Municipal Code section 13.10.010 which is attached hereto as an exhibit and incorporated herein by this reference for the convenience of the Appellate Court.

The trial court heard the following evidence:

On September 22, 2005, Officer Alexiou observed ELIJAH KAI CROWELL, the defendant, teaching a surfing lesson on Cowell's Beach. The lesson involved Elijah Kai Crowell and three other people, one of whom was an eight year old child. The officer observed the eight year old female being pushed into the ocean from the beach. The girl got up crying and appeared to be in distress. Upon contact the officer found that she had sustained a lower leg injury. The officer asked the mother of the child to come out of the water, and he got the mother's consent to treat the girl's injury. He splinted the child's leg and called Code 2 for an ambulance. After speaking to the defendant, the officer cited him for failing to get a permit pursuant to MC 13.10.010 prior to conducting surfing lessons on the public beach.

There was no cross examination.  The defense produced two declarations which are attached hereto and incorporated herein by this reference.  The first declaration was that of the defendant and the second declaration was that of the owner of the Santa Cruz Surf School, Dylan Greiner.

Defendant's declaration states that he is an independent contractor working as a surf instructor with Santa Cruz Surf School.  He was providing surfing instruction at the "surf break" of Cowell's Beach to a mother with her two children on the date of the issuance of the citation.  He states that he did not receive money for the lessons while on the public beach.  Mr. Greiner states in his declaration that the school accepted payment for the surf lessons observed by the officer, but that no money exchanged hands at the location of the lesson, the public beach.

Counsel argued that Defendant merely provides recreational instructional services, and since he does not sell a tangible product, the activity does not come within the prohibition of the ordinance.  If the City wished to prohibit "services", then the ordinance should have included the word "services," and the language of the ordinance should be strictly construed against the drafter of the ordinance.

The Deputy City Attorney argued that there was no authority for strict construction of the language of a statute against the drafter.  She pointed out that when limitation of the effect of an ordinance to tangible personal property was desired the City had no difficulty in drafting an ordinance that did so provide, for example in Municipal Code section 5.42.000 ( c) .  The Deputy City Attorney argued that the phrase in the ordinance "any other thing" is not limited to tangible goods, and does include sales of intangibles such as surfing lessons.  She pointed out that the ordinance has been uniformly enforced to restrict all lessons of any kind.

The matter was taken under submission and set for judgment on December 20, 2005.  On that date the defendant was found guilty.  The Court determined that the word "thing" can be defined as an idea, a deed, an act or an accomplishment, or an object of a right.. (Webster's New Collegiate Dictionary (1980) G.& C. Merriam Co.  "Thing" is not restricted to tangibles by definition nor by the ordinance.  "Sell" is defined in the same dictionary as "to deliver the

1  personal services of for money." The delivery, in this case, of the activity of a class on surfing,

2  or a surfing lesson, completed the act of selling. The delivery of the product or thing occurred

3  on public property in violation of the ordinance in question. The instant appeal was filed on

4  January 20, 2006.

5       On February 7, 2006, after Defendant filed this appeal and prior to the Hearing on the

6  Settled Statement, the defendant filed a Writ of Habeas Corpus. Defendant sought the writ

7  based on "newly discovered evidence." On April 5, 2006, the Court held the hearing on the

8  writ petition prior to the settled statement hearing.

9       Petitioner asserted there was "newly discovered evidence." He argued that Cowell's

10  Beach is not under the control of the City of Santa Cruz except through the permit process

11  administered by the California Coastal Commission. See Petitioner's "writ" evidence attached

12  hereto and incorporated herein by this reference. The "newly discovered" evidence was that

13  the City had let the City Beach Management Plan Permit from the Coastal Commission lapse.

14  He argued that this proved there was no authority for the City of Santa Cruz Parks and

15  Recreation Department to issue citations in the area of Cowell's or Cowell's Beach during the

16  lapse.

17       Procedurally the Court construed the Writ of Habeas Corpus as a motion for

18  reconsideration (as Petitioner presented no authority for how a writ could lie). The Court found

19  that the motion was untimely and that the proffered evidence was not "newly discovered"

20  within the meaning of the statute allowing for reconsideration of judgment. In the alternative,

21  the Court determined that, even if the evidence had been presented at trial, it would not change

22  the judgment of the Court as the legislative act creating the Coastal Commission would not act

23  to divest the City of Santa Cruz of ownership and control of its property.

24       With regard to defendant's argument that the sand at the surf break of Cowell's Beach

25  is not City property, the Court does not concur. The City's ownership extends to submerged

26  lands and thus includes the "surf break". Attached hereto and incorporated herein by this

27  reference is Chapter 1291 of the 1969 Act of the State Legislature which conveyed the beach in

28  question to the City of Santa Cruz. Included there is a map of the point at which the proposed

1  boundary of submerged lands is located.  The City of Santa Cruz ownership and jurisdiction

2  extends beyond the area of the violation to the submerged lands.

3      The Court does now settle and allow the foregoing Statement on Appeal and certifies

4  that the same is a true and correct statement of the proceedings had in the above-entitled action.

5  DATED: May 30, 2006

KIM BASKETT
Traffic Referee

The Santa Cruz Municipal Code

I hereby certify the foregoing
instrument is a correct copy of
the original on file in this office.

DATED ___10/23/07___

ALEX CALVO, CLERK

By _____ Deputy

Chapter 13.10
SALES - PUBLIC BEACHES AND PARKS

Sections:

13.10.010 Permit for sales in public parks and beaches.

13.10.020 Application for permit.

13.10.030 Local nonprofit organizations-Issuance of permits by director.

13.10.040 Other persons and organizations - Issuance of permit by city council.

13.10.050 Issuance or denial of permit - Criteria and conditions.

13.10.060 Appeals.

13.10.070 Violations.

## 13.10.010 PERMIT FOR SALES IN PUBLIC PARKS AND BEACHES.

No person shall sell any goods, food, beverages or any other thing in any public park or on any public beach under the jurisdiction of the department of parks and recreation, unless authorized by a permit issued pursuant to this chapter and unless in conformity with the terms and conditions of such permit.

(Ord. 80-32 § 2 (part), 1980).

## 13.10.020 APPLICATION FOR PERMIT.

Any person who desires a permit may apply for such permit by filing an application with the director of parks and recreation. The application shall be filed on forms provided by the department of parks and recreation, and shall include such information as may be requested by the department.

(Ord. 80-32 § 2 (part), 1980).

## 13.10.030 LOCAL NONPROFIT ORGANIZATIONS - ISSUANCE OF PERMITS BY DIRECTOR.

The director of parks and recreation may issue permits only for nonprofit organizations meeting the following criteria:

(a) The organization has its home base, or a local branch with a home base, in Santa Cruz County;

(b) The organization has qualified for and received tax-exempt status as a nonprofit organization under the California Revenue and Taxation Code and under the federal Internal Revenue Code, or is organized for purposes and conducted in such a manner that it would so qualify for tax-exempt status as a nonprofit organization;

(c) The organization's services are directed toward the local community;

(d) The organization will directly conduct, promote, and/or benefit from the event.

(Ord. 80-32 § 2 (part), 1980).

**13.10.040 OTHER PERSONS AND ORGANIZATIONS - ISSUANCE OF PERMIT BY CITY COUNCIL.**

Any other person or organization applying for a permit under this chapter may receive such a permit only if issued by the city council. Upon receipt of an application from such other person or organization, the director of parks and recreation shall obtain any information necessary or appropriate and shall forward the application to the council, together with any appropriate recommendation.

(Ord. 80-32 § 2 (part), 1980).

**13.10.050 ISSUANCE OR DENIAL OF PERMIT - CRITERIA AND CONDITIONS.**

The director or city council may issue or deny the permit, depending upon whether the decision maker finds that issuance or denial is consistent with the public welfare. If the decision maker issues a permit, it may be issued subject to any terms and conditions considered appropriate or necessary in order to protect the public welfare, and in order to make sure that any activities subject to the permit are conducted in a manner that is consistent with the use of parks and beaches by other persons. In addition, any permit issued shall be subject to such rules and regulations as the director of parks and recreation may have adopted or may thereafter adopt. If a permit is granted, it shall specify the times and places wherein the permit may be exercised, and may limit the number of days during any week, month or year wherein a permit may be exercised by any one person or organization.

(Ord. 80-32 § 2 (part), 1980).

**13.10.060 APPEALS.**

Any person aggrieved by a decision of the director may appeal the decision to the city council, in accordance with Chapter 1.16 of this code.

(Ord. 80-32 § 2 (part), 1980).

## 13.10.070 VIOLATIONS.

Any person who sells any goods, food, beverages, or any other thing in any public park or on any beach under the jurisdiction of the department of parks and recreation, without first having obtained the permit required by this chapter, or in violation of any of the terms or conditions of such permit, is guilty of an infraction.

(Ord. 80-32 § 2 (part), 1980).

# DECLARATION OF ELIJAH CROWELL

Elijah Crowell, under penalty of perjury under the laws of the State of California, declares the following true and correct:

1.  I am an independent contractor working as a surf instructor with Santa Cruz Surf School. On 9/22/05 I taught a lesson to Octavia Anderson-Mackey and her children (daughter, Kaela and son, Conor).

2.  I did not market to or otherwise solicit business from these clients on or about Cowell's Beach on 9/22/05 or any day prior to said date.

3.  I did not accept any payment or engage the clients in any financial transaction on or about Cowell's Beach.

4.  I met with these clients at Santa Cruz Surf School located at 322 Pacific Avenue and provided surf instruction thereafter at the surf break commonly known as Cowell's located directly off Cowell's Beach, in Santa Cruz, California.

5.  I was issued a citation by Lifeguard, John Alexeau for violation of Santa Cruz City Code Section 13.10.070 (Beach Sales Without a Permit) on 9/22/05 at approximately 2:15PM.

_____
Elijah Crowell

Date: 12-6-05

I hereby certify the foregoing
instrument is a correct copy of
the original on file in this office.

DATED 10-23-07
ALEX CALVO, CLERK
By _____ Deputy

# DECLARATION OF DYLAN GREINER

Dylan Greiner, under penalty of perjury under the laws of the State of California, declares the following true and correct:

1. I am the owner of Santa Cruz Surf School, a duly licensed business within the City of Santa Cruz.

2. I market my school's services and clients are registered either: in person at the business office located at 322 Pacific Avenue, Santa Cruz, or, on-line using the self-registration business' website.

3. No marketing to Octavia or her family took place on Cowell's Beach or any other conduct to secure her as a client.

4. Santa Cruz Surf School accepts payment from clients at the business office location.

5. Santa Cruz Surf School accepted payment from Octavia Anderson-Mackey on 9/22/05 at 322 Pacific Avenue, Santa Cruz.


_____
Dylan Greiner


Date: __12 - 6 - 05_____


I hereby certify the foregoing
instrument is a correct copy of
the original on file in this office.

DATED _16-23-07_____
ALEX CALVO, CLERK

By _____ Deputy

960.3. On abandonment of an easement or the vacation of a highway, when the county owns only an easement, title thereto reverts to the owner of the underlying fee except as otherwise provided in Section 960.1. Where the county owns the property on which the vacated highway was located in fee, the board of supervisors may dispose of the property as provided in Section 960.4.

## CHAPTER 1291

*An act to convey certain tide and submerged lands to the City of Santa Cruz, in furtherance of navigation, commerce and fisheries upon certain trusts and conditions, and providing for the government, management, use, and control thereof, and reserving rights to the state.*

[Approved by Governor August 30, 1969. Filed with Secretary of State August 31, 1969.]

*The people of the State of California do enact as follows:*

SECTION 1. There is hereby granted to the City of Santa Cruz, a municipal corporation of the State of California, and to its successors, all the right, title and interest of the State of California, held by the state by virtue of its sovereignty in and to all tide and submerged lands, whether filled or unfilled, lying between Santa Cruz Point and the west jetty of the small craft harbor, more particularly described as follows:

Beginning at a station in the Bay of Monterey from which a granite monument at the Northwestern corner of lands conveyed by Almus L. Rountree and Elizabeth E. Rountree, his wife, to the United States of America by deed dated May 16, 1868, and recorded in Volume 11 of Deeds at Page 495, Santa Cruz County Records, bears North 38° West 1000.00 feet distant; thence from said point of beginning Northeasterly in a direct line to a station from which an "X" cut in the concrete at the intersection of the Eastern line of 4th Avenue with the Northern line of Atlantic Avenue, as said intersection is shown on "Record of Survey Map of the Lands of Russell Giffin Et Ux", filed in Volume 37 of Maps at Page 62, Santa Cruz County Records, bears North 22° 45' West 1618.00 feet distant; thence due East 100 feet, a little more or less, to the line of low tide on the Western side of the Western jetty at the entrance to the Santa Cruz Small Craft Harbor; thence Northerly along said low tide line to its intersection with the low tide line of the Bay of Monterey; thence Westerly along said last mentioned low tide line to the Eastern boundary of the tidelands conveyed to the Town of Santa Cruz by the People of the State of California, as described in Section 2 of an act entitled "An Act supplementary to and amendatory of an Act to incorporate the Town of Santa Cruz, approved March thirty-first, eighteen hundred and sixty-six", approved March

I hereby certify the foregoing instrument is a correct copy of the original on file in this office.

DATED 10-24-07

ALEX CALVO, CLERK

By K. Truesdell Deputy

21, 1872, as Chapter CCCXLII of the Statutes of California of the Nineteenth Session of the Legislature of the State of California; thence Westerly along the Southern boundary of said last mentioned lands to a station from which the place of beginning bears due East; thence due East about 100 feet to the place of beginning.

To be forever held by such city and by its successors in trust for the uses and purposes, and upon the express conditions following, to wit:

(a) That the lands shall be used by the city and its successors for purposes in which there is a general statewide interest as follows:

(1) For the establishment, improvement and conduct of a harbor, and for the construction, reconstruction, repair, maintenance, and operation of wharves, docks, piers, slips, quays, and all other works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of commerce and navigation.

(2) For the construction, reconstruction, repair and maintenance of highways, streets, roadways, bridges, parking facilities, power, telephone, telegraph or cable lines or landings, water and gas pipelines, and all other transportation and utility facilities or betterments incidental, necessary or convenient for the promotion and accommodation of any of the uses set forth in this section.

(3) For the construction, reconstruction, repair, maintenance and operation of public buildings, public assembly and meeting places, convention centers, parks, playgrounds, bathhouses and bathing facilities, recreation and fishing piers, public recreation facilities, including but not limited to public golf courses, and for all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any such uses.

(4) For the establishment, improvement and conduct of small boat harbors, marinas, aquatic playgrounds and similar recreational facilities, and for the construction, reconstruction, repair, maintenance and operation of all works, buildings, facilities, utilities, structures and appliances incidental, necessary or convenient for the promotion and accommodation of any of such uses, including but not limited to snackbars, cafes, restaurants, launching ramps and hoists, storage sheds, boat repair facilities with cranes and marine ways, administration buildings, public restrooms, bait and tackle shops, chandleries, boat sales establishments, service stations and fuel docks, yacht club buildings, parking areas, roadways, pedestrian ways and landscaped areas.

(b) The city, or its successors shall not at any time, grant, convey, give or alienate such lands, or any part thereof, to any individual, firm or corporation for any purposes whatever; provided, that the city, or its successors, may grant franchises thereon for limited periods, not exceeding 66 years,

for wharves and other public uses and purposes, and may lease the lands, or any part thereof, for limited periods, not exceeding 66 years, for purposes consistent with the trusts upon which the lands are held by the state, and with the requirements of commerce and navigation, and collect and retain rents and other revenues from such leases, franchises and privileges. Such lease or leases, franchises and privileges may be for any and all purposes which shall not interfere with commerce and navigation. Nothing contained in this paragraph (b) shall be deemed to affect the validity or term of any franchise granted by said city under the Franchise Act of 1937, and any such franchise shall be effective with respect to the lands.

Any plan for development involving filling, dredging or other improvements must first be approved by the State Lands Commission 90 days prior to commencement of work thereon. In the event that the commission does not respond within 90 days of receipt, approval of the project is deemed to be given. The purpose of this provision is to insure that the provisions of Chapter 1642, Statutes of 1967, are being carried out and that any developments by local agencies pursuant to legislative grants or otherwise will be in accord with policies and plans included in the California Comprehensive Ocean Area Plan.

(c) Within 10 years from the effective date of this act, the lands shall be substantially improved by the city without expense to the state, and if the State Lands Commission determines that the city has failed to improve the lands as herein required, all right, title, and interest of the city in and to all lands granted by this act shall cease and the lands shall revert and rest in the state.

Nothing contained in this act, however, shall preclude expenditures for the development of the lands for any public purpose not inconsistent with commerce, navigation and fishery, by the state, or any board, agency or commission thereof, when authorized or approved by the city, nor by the city of any funds received for such purpose from the state or any board, agency or commission thereof.

(d) In the management, conduct, operation and control of said lands or any improvements, betterments, or structures thereon, the city or its successors shall make no discrimination in rates, tolls or charges for any use or service in connection therewith.

(e) The state shall have the right to use without charge any transportation, landing or storage improvements, betterments or structures constructed upon the lands for any vessel or other watercraft, aircraft, or railroad owned or operated by the state.

(f) There is hereby reserved to the people of the state the right to fish in the waters on the lands with the right of convenient access to the water over the lands for such purpose.

(g) There is hereby excepted and reserved in the state all deposits of minerals, including oil and gas, in the lands, and to the state, or persons authorized by the state, the right to prospect for, mine, and remove such deposits from the lands.

(h) Such lands are granted subject to the express reservation and condition that the state may at any time in the future use the lands or any portion thereof for highway purposes without compensation to the city, its successors or assigns, or any person, firm or public or private corporation claiming under it; except that in the event improvements, betterments or structures have been placed upon the property taken by the state for such purposes, compensation shall be made to the person entitled thereto for the value of his interest in the improvements, betterments or structures taken or the damages to such interest.

(i) The State Lands Commission shall, at the cost of the city, survey and monument the granted lands and record a description and plat thereof in the office of the County Recorder of Santa Cruz County.

(j) The city shall cause to be made and filed with the Department of Finance, annually, a detailed statement of receipts and expenditures by it of all rents, revenues, issues and profits in any manner hereafter arising from the granted lands or any improvements, betterments or structures thereon.

## CHAPTER 1292

An act to amend Section 14115 of the Welfare and Institutions Code, relating to payments.

[Approved by Governor August 30, 1969. Filed with Secretary of State August 21, 1969.]

The people of the State of California do enact as follows:

SECTION 1. Section 14115 of the Welfare and Institutions Code is amended to read:

14115. Bills for services under this chapter shall be submitted not more than two months after the month in which the service is rendered, and shall be in the form prescribed by the director, except that in the event the patient does not identify himself to the provider as a Medi-Cal beneficiary, the provider shall be entitled to submit his statement at any time within 60 days after that date certified by the provider as the date said patient was first identified as a Medi-Cal beneficiary, provided, however that such date certified by the provider as the date the patient was first so identified shall be not later than one year after the month in which the service was rendered; further, the director may, where he finds that delay in the submission of bills was caused by circumstances beyond the control of the provider, extend the period for submission of bills for a period not to exceed one year.



MAP OF
THE CITY OF
SANTA CRUZ
CALIFORNIA

SCALE IN FEET

LEGEND:
CORPORATION BOUNDARY
DE LAVEAGA PARK BOUNDARY

# EXHIBIT B

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ
APPELLATE DIVISION

| | |
|---|---|
| PEOPLE, | ) Traffic Case No.: 5SZ102332 |
| Plaintiff, | ) |
| vs. | ) Appellate Case No: AP001400 |
| | ) |
| ELIJAH CROWELL, | ) |
| Defendant | ) |
| | ) |

**REMITTITUR**

I, Alex Calvo, Clerk of the Appellate Division of the Superior Court of California, Court of Santa Cruz, do hereby certify that the attached is a true and correct copy of the original opinion or decision entered in the above-entitled cause on AUGUST 17, 2006 and that this opinion or decision has now become final.

Date:  **SEP - 5 2006**

WITNESS my hand and the seal of the Court affixed at my office

Alex Calvo, Clerk

By _____
Deputy Clerk    KAREN BROUGHTON

Returned with this remittitur:

File XXXXXX            Exhibits _____        Other _____

Remittitur Traffic

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ | CASE NUMBER AP001400 |
|---|---|

DATE:  08/17/06                          DEPARTMENT:  APP

CASE NAME:  PEOPLE V ELIJAH CROWELL

PROCEEDING: HEARING RE APPEAL

---

HONORABLE Judge Robert B. Yonts, Jr., Judge Robert B. Atack and Judge
Samuel S. Stevens, presiding
CLERK: Bret Morrow
REPORTER: No Reporter
-
-
APPEARANCES:
 David Meyberg, Esq., Counsel appearing with ELIJAH CROWELL
 Jeffrey Barnes, Esq., Counsel appearing for PEOPLE OF THE STATE OF
CALIFORNIA
-
-
The case is regularly called for hearing.
-
The Court advises of its tentative ruling.
-
Counsel address(es) the issues now before the Court.
-    -
-
RULING:
Lower Court judgment is reversed.
-
========= MINUTE ORDER END/BM =========
          Case No. AP001400

I hereby certify the foregoing
instrument is a correct copy of
the original on file in this office.

DATED  SEP - 5 2006
       ALEX CALVO, CLERK

By _____ Deputy

# EXHIBIT C



# California State Parks
## DISCOVER THE MANY STATES OF CALIFORNIA.

Brochures

Video

State Parks Store

Current Weather

Map of Location

Accessible Features

California Coastline Photos

View Parks by
Region, City
or County

Friends of Santa Cruz State
Parks

## Seacliff SB
State Beach

Online
**Reservations**
Book them now.

This beach is known for its fishing pier and concrete freighter, Th
**Palo Alto.** Unfortunately, the ship is unsafe and **closed** to the
public. Only the pier is open for fishing. The beach is also a popu
swimming spot. There is a long stretch of sand backed by bluffs.
There is a covered picnic facility. The park also has an interpretive
center.

Park Features

### Location - Directions
Take the State Park Drive exit from Highway One in the
neighborhood of Aptos.

Hours
Call the beach

County

Santa Cruz

### Seasons - Climate - Recommended clothing
The weather can be changeable; layered clothing is recommended

Region

San Francisco

Reservations
1-800-444-727

**Why there is a ship at the end of the pier?**
**Was it built there -- or did it sink there?**

(831) 685-644

Operating Ho
Call the beach

In 1910 a Norwegian civil engineer named Fougner thought of using
concrete to build ships. It wasn't until 1917, when wartime steel
shortages required the use of cement for construction that
Fougner's idea was used. Three concrete ships were built at the
U.S. Naval Shipyard in Oakland, California. These ships were the
**Faith,** the **Peralta,** and the **Palo Alto.** The Peralta and the Palo Alto

were built for wartime use as tankers, however World War One ended before ship construction was finished -- so they were never used.

The **Palo Alto** remained docked in Oakland until 1929, when the Cal-Nevada Company bought the ship with the idea of making her into an amusement and fishing ship. Her maiden voyage was made under tow to Seacliff State Beach. Once positioned at the beach, the sea cocks were opened and the Palo Alto settled to the ocean bottom. By the summer of 1930 a pier had been built leading to the ship, the ship was remodeled. A dance floor on the main deck was added, also a cafe in the superstructure was built, as was a fifty-four foot heated swimming pool, and a series of carnival type concessions were placed on the afterdeck. The Cal-Nevada Company went broke after two seasons -- then the Palo Alto was stripped, leaving the ship and the pier used only for fishing.

Conditions of Use | Privacy Policy
Copyright © 2007 State of California

# EXHIBIT D



COPY

# COWELL BEACH CONCESSION LICENSE AGREEMENT

## BETWEEN

### CITY OF SANTA CRUZ AND ED GUZMAN

1.   TERM ................................................................................ 2

2.   USE ................................................................................... 2

3.   BUSINESS ......................................................................... 2

4.   LICENSES AND PERMITS ................................................ 3

5.   LICENSE FEES ................................................................. 3

6.   SECURITY DEPOSIT ......................................................... 5

7.   CONDITIONS OF LICENSE................................................ 5

8.   CONDUCT OF BUSINESS ................................................. 6

9.   OPERATION OF BUSINESS .............................................. 6

10.  CONDITION OF EQUIPMENT AND CONCESSION VEHICLES.................. 7

11.  EQUIPMENT AND VEHICLES. ........................................... 7

12.  INSPECTION...................................................................... 7

13.  ASSIGNMENT PROHIBITED ............................................. 7

14.  INDEMNIFICATION AND INSURANCE............................... 8

15.  NOTICES ........................................................................... 9

16.  WAIVERS ........................................................................... 10

17.  RIGHTS AND OPTIONS ..................................................... 10

18.  TERMINATION ................................................................... 10

19.  REMEDIES ......................................................................... 10

20.  ATTORNEY'S FEES ........................................................... 10

21.  RULES AND REGULATIONS .............................................. 11

22.  MISCELLANEOUS .............................................................. 11

THIS LICENSE AGREEMENT, made and entered into this 31st day of December 2001 by and between the City of Santa Cruz, a municipal corporation, hereinafter called "City" and Ed Guzman, whose address is 5 Isabel Drive, Santa Cruz, CA, 95062, hereinafter called "Licensee."

In consideration of the fees to be paid hereunder and of the agreements, covenants and conditions herein contained, and for other good and valuable consideration, the City and the Licensee agree as follows:

1.    TERM.    The term of this License is for two (2) years beginning on December 31, 2001, and ending at midnight on December 31, 2003, at the license fees specified herein. Thereafter, at the sole option of the City, this License Agreement may be renewed annually for up to two years additional one year terms. Licensee shall notify City in writing no less than sixty (60) days prior to the anniversary date of this Agreement if Licensee wishes City to consider exercising renewal option.

2.    USE.

(A)    City hereby Licenses Licensee to perform business as described in Paragraph 3 of this Agreement on Cowell Beach, hereinafter called "Beach."    The areas within which the equipment rental business shall be operated by Licensee, including the booth area are those portions of the Cowell Beach to be determined by the Beach Safety Officer along with Ed Guzman to this License agreement.    Said areas are referred to in this Agreement as the "License Area."    Use of any other areas for Licensee's business on the Beach must be approved in writing by the Recreation Superintendent. This Agreement does not convey any right, title or interest in any City property.

(B)    The City reserves the right at its sole option, to change the location of the Licensee's operations from time to time by providing a comparable location on the Beach.

3.    BUSINESS.

(A)    Primary Specialty    Licensee shall engage only in the business of operating a beach equipment rental concession fully equipped and Licensed for providing 1) equipment rental operated by Licensee, 2) beach oriented instructional classes.    (B)    Special Conditions    Licensee may not sell anything.

(C)    Definition    Hereinafter, the business described herein shall be called "Business."

2

(D)    Disputes  In the event of a dispute, the City shall make the final determination as to what constitutes "beach equipment" and "beach-oriented instructional classes" for purposes of this Agreement.

4.    LICENSES AND PERMITS.  It shall be Licensee's responsibility, at Licensee's sole cost and expense, to obtain all necessary Licenses and permits to carry out the terms of this License and to operate the Business.

5.    LICENSE FEES .

(A)    Commencing the 1st day of the License, and for the License term or until modified, Licensee agrees to and shall pay to City a percentage equal to ten percent (10%) of Licensee's gross sales and business transacted, as hereinafter defined.

(B)    Ten percent (10%) of the month's gross sales and business transacted shall be due and payable by the fifteenth (15th) day of the month following the end of the month for which the license fees are due.  Along with the percentage license fees, the Licensee shall furnish a true and accurate statement of all sales and business transacted during said month on a form furnished by the City.  The statement of all sales and business transacted shall be certified to be correct by Licensee or Licensee's principal agent.

(C)    License fees not paid when due shall bear interest from the date due until paid at the maximum rate the City is permitted by law to charge.  Licensee recognizes that Licensee's failure to submit when due the license fees and the statement of sales and business transacted for the month will cause City to incur costs not contemplated by this License, the exact amount of such costs being extremely difficult and impracticable to fix.  Such costs include, without limitation, processing and accounting charges.  Licensee therefore agrees that if license fees or the statement of sales and business transacted have not been remitted to the City when said payment is due, Licensee shall pay to City an additional sum of ten percent (10%) of the overdue license fees as a late charge.  The parties agree that this late charge represents a fair and reasonable estimate of the costs that City will incur by reason of late payment by Licensee.  Acceptance of any late charge shall not constitute a waiver of Licensee's breach with respect to the overdue amount, or prevent City from exercising any of the other rights and remedies available to City.

(D)    "Gross Sales and Business Transacted" shall include:

(1)    The entire amount of the price charged, whether wholly or partially for cash or on credit, or otherwise, for all rentals and classes of every kind and description, made in, upon, or resulting from conduct of Business to be conducted in License Area.

(2)    All gross receipts received by Licensee from the sale or rental of beach equipment in accordance with generally accepted accounting principles. City shall be entitled to review the amount of gross sales and sales taxes reported to the State Board of Equalization at each quarterly report period in determining the amount of said gross receipts. Upon completion of its quarterly return to the State Board of Equalization for sales tax reported and within fifteen (15) days after the end of each quarter, Licensee shall mail to City a true and correct copy of the quarterly return. If more than one business operated by Licensee is reported by Licensee on the same quarterly sales tax return, Licensee shall furnish a supplemental report which delineates the sales of all Licensee's businesses being reported.

(E)    "Gross sales and business transacted" shall not include, or if included, there shall be deducted (but only to the extent they have been included), as the case may be, the amount of any sales tax due the City, County and State on sales from the premises where such taxes are both added to the selling price or absorbed therein and paid to the taxing authority by Licensee.

(F)    Licensee shall keep true and complete records and accounts of all sales and business transacted, including daily bank deposits and sales tax returns to the State Board of Equalization, and shall give City access, during reasonable hours, to such records and accounts.

(G)    Licensee shall keep and preserve for at least forty-eight (48) months after the end of each year of this Agreement all sales slips, cash register tape readings, sales books, sales tax returns, bank books, and duplicate deposit slips, and other evidence of gross sales and business transacted for such year.

(H)    City shall have the right at any time and from time to time to audit all of the books of account, bank statements, documents, records, returns, papers, and files of Licensee relating to gross sales and business transacted, and, on request by City, Licensee shall make all such matters available for examination at a site selected by the City. If City should have an audit made for any quarter and the gross sales and business transacted shown by Licensee's statement for such quarter should be found to be understated by more than three percent (3%), Licensee shall immediately pay to City the cost of such audit as well as the additional license fees payable by Licensee to City, plus interest and late charges payable. Otherwise, the cost of such audit shall be paid by City. City's

right to have such an audit made with respect to any quarter shall expire forty-eight (48) months after Licensee's statement for such quarter.

(I)    The Licensee agrees to use a cash collection system acceptable to the City to record sales. The City may, at its option, require Licensee to institute changes in said cash collection system.

6.    SECURITY DEPOSIT.  Upon request of the Recreation Superintendent, Licensee shall immediately deposit Five Hundred Dollars ($500.00) with the City (i.e. approximately two (2) months of average License fees) as a security deposit for the Licensee's performance of the provisions of this License. If Licensee breaches the terms of this License, City can use the security deposit, or any portion of it, to cure the breach or to compensate City for all damage sustained by City resulting from Licensee's breach. Upon City's demand Licensee shall immediately pay to City a sum equal to the portion of security deposit expended or applied by City as provided in this paragraph so as to maintain the security deposit in the sum initially deposited with City. If Licensee has not breached the terms of this License at the expiration or termination of this License, City shall return the security deposit to Licensee. City's obligations with respect to any such security deposit would be those of a debtor and not a trustee. City may either maintain the security deposit separate and apart from City's general funds or can commingle the security deposit with City's general and other funds. City shall not be required to pay Licensee interest on the security deposit.

If average monthly license fees cannot be estimated, the Recreation Superintendent shall determine the amount of the security deposit. At City's option, the City may adjust the amount of the security deposit at the time this Agreement is renewed.

7.    CONDITIONS OF LICENSE.  Licensee agrees that the Licensee's right to operation of the business is granted by the City upon the following express standards and conditions:

(A)    Licensee hereby agrees to abide by all laws and regulations promulgated by local, state and federal agencies pertaining to the operation of the business defined in Paragraph 3.

(B)    Licensee hereby agrees to abide by all laws and regulations promulgated by the United States Coast Guard pertaining to commercial marine operations.

(C)    Licensee as operator of the concession shall be responsible to the City for any additional costs incurred by the City as a result of the operation of this concession.

(D)    City Lifeguards reserve the right to inspect Licensee's equipment at any time and terminate operation at any time that the City Lifeguards deem the operation to be unsafe or not in

compliance with any conditions herein contained. City Lifeguards reserve the right to move the location of the concession operation in the Cowell Beach area, due to changing environmental conditions, safety concerns a or other special conditions. Operation shall not resume until City Lifeguards provide Licensee with written notice to resume operation.

      (E)    Conduct of Licensee's operations while in Santa Cruz waters adjacent to Wharf are subject to all present and future rules promulgated by the City.

      (F)    The Recreation Superintendent may at any time limit or totally restrict the Licensee's use of the Beach due to ocean or weather conditions.

      (G)    City Manager or designee may restrict Licensee's operation on days that major special events are scheduled within the Monterey Bay so that said operations do not interfere with the special events.

      (H)    In addition to License Fees described in paragraph 5, Licensee shall remit to City all present and future relevant taxes or assessments levied by the City.

    8.    <u>CONDUCT OF BUSINESS</u>.    Licensee agrees that Licensee's business shall be established and conducted throughout the License term in a first-class manner. Licensee will not use the License Area for, or carry on or permit within said License Area, any offensive, noisy, or dangerous trade, business, manufacture, or occupation, or any nuisance. Licensee expressly agrees at all times during the License term to maintain, and do all things necessary to maintain the License Area in a clean, neat, and sanitary manner. Licensee further agrees to comply with any and all laws, ordinances, rules and regulations of any public authority in force during the term of this License.

    9.    <u>OPERATION OF BUSINESS</u>.    Licensee further agrees to operate Business on a regular and reasonable schedule during the months of May through September, hereinafter referred to as "Summer Months" and other times as mutually agreed upon. Licensee shall employ its best efforts to operate the business conducted on the Beach in a manner that will produce the maximum volume of gross sales. Licensee may temporarily close down Business due to inclement weather or, if Business involves marine activity, dangerous ocean conditions. During the License term Licensee shall conduct and carry on the Business during the Summer Months, and shall stay open for business and cause such business to be conducted, during those days and for such number of hours each of those days, as is reasonable for businesses of its type. City may, at its option, and for good cause, permit Licensee to temporarily close down the Business.

Licensee agrees that no goods, merchandise, or materials shall be kept or stored on the Beach which is in any way hazardous. Licensee further agrees not to suffer any act of omission or commission on the Beach which will increase the rate of any insurance to be paid by City.

10.    CONDITION OF EQUIPMENT AND CONCESSION VEHICLES. It shall be the sole responsibility of Licensee, at Licensee's sole expense, to investigate and determine the conditions of the booth, the condition of any existing improvements and the suitability of such conditions for the Business to be conducted by Licensee pursuant to this Agreement.

11.    EQUIPMENT AND VEHICLES. Licensee shall furnish at his own expense all equipment and vehicles and other items necessary for the operation of the concession. All services and operations shall be of the highest quality presentation and safety. Excepting such normal maintenance and repair work as is required hereunder, vehicles shall not be altered repaired or changed , no signs shall be attached to , painted on , or otherwise affixed to the exterior of the vehicles without obtaining the prior written approval of the City. The transporting of the operation and vehicles is the responsibility of the licensee; the City will provide not storage. The concession and vehicles are to be removed from the beach on a daily basis in an effective and safe manner. The vehicle used must be of adequate size, weight and type to maintain a 5 mph or less speed on soft sand and not to require excessive speed or power to avoid getting stuck in the sand. Getting stuck in the sand is unacceptable and must be avoided. Licensee must transport the operation on and off the beach a maximum of one time each day. Drivers must have a valid drivers licensee and licensee must provide a beach driving safety course to all qualified drivers.

12.    INSPECTION. City and the agents and employees of City shall have the right to enter the License Area at all reasonable times to inspect the same, to see that no damage has been or is done, and to protect any and all rights of City, and to post such reasonable notices as City may desire to protect the rights of City.

13.    ASSIGNMENT PROHIBITED. Licensee shall not, either voluntarily or involuntarily, assign or encumber its interests in this License or allow any other person or entity (except Licensee's authorized representatives) to operate under the terms of this License Agreement, without the prior approval and consent of the City. Any such assignment without prior approval shall be null and void.

14.    INDEMNIFICATION AND INSURANCE.

(A)    Licensee shall indemnify, defend and hold City and City's property, including License Area and any buildings, fixtures, or equipment now or hereafter in the License Area, free and harmless from any and all liability, claims, loss, damages, or expenses resulting from Licensee's occupation and use of Beach specifically including, without limitation, any liability, claim, loss, damage, or expense arising by reason of:

(1)    The death or injury of any person, including Licensee and Licensee's agents and employees, caused or allegedly caused by:

(a)    The condition of the License Area;

(b)    Any act or omission of Licensee or any other person in, on, or about the License Area with Licensee's permission and consent;

(c)    Any other cause whatsoever while such person is in or on the License Area.

(2)    Damage to or destruction of any property, including Licensee's property or the property of Licensee's employees or agents, from:

(a)    The condition of the License Area;

(b)    Any act or omission of Licensee or any other person in, on, or about the License Area with Licensee's permission and consent;

(c)    Any other cause whatsoever while such property is in or on the License Area or in any way connected with the License Area.

(3)    Any work performed on the License Area or materials furnished to the License Area at the instance or request of Licensee or any person or entity acting for or on behalf of Licensee; or

(4)    Licensee's failure to perform any provision of this License or to comply with any requirement of law or any requirement imposed on Licensee or the License Area by any duly authorized governmental agency or political subdivision.

(B)    Licensee further agrees to take out and keep in force during the life hereof, at Licensee's expense, commercial general liability insurance, with a company or companies satisfactory to City to protect City against any liability to the public incident to the use of, or resulting from, any accident or occurrence in or about the License Area. This insurance shall provide a single combined liability limit of at least One Million Dollars ($1,000,000) for any one accident or occurrence, and a

general aggregate limit of not less than One Million Dollars ($1,000,000) for any one policy year. All commercial general liability insurance shall insure performance by Licensee of the indemnity provisions of paragraph 14(A). The policy or policies shall require that in the event of modification or cancellation of any policy, the insurance carrier shall notify City in writing at least thirty (30) days prior thereto. Licensee agrees that if Licensee does not keep such insurance in full force and effect, City may, at its option either terminate this License, or take out the necessary insurance and pay the premium, and the repayment thereof shall be deemed to be part of the license fees and payable as such on the next day upon which license fees becomes due. Licensee agrees that City shall be named on each policy as an additional insured party in accordance with the foregoing covenants. The policy or policies shall further provide that any other insurance carried by City shall be excess insurance only, as to the liability insured thereby.

City may increase or decrease the amount of commercial general liability insurance required, based upon a general review by City of the standard insurance requirement as resolved by the City Council of City to be in the public interest and required for all other License Area on the Beach. Changes in insurance amounts shall occur not more frequently than once a year.

(C)    Licensee agrees that if City is involuntarily made a party defendant to any litigation concerning this License by reason of any act or omission of Licensee, and not because of any act or omission solely of City, then Licensee shall indemnify and hold harmless the City from all loss, cost, liability and expense by reason thereof, including reasonable attorneys fees and court costs incurred by City in such litigation.

15.    NOTICES.  Any notice, demand, or communication under or in connection with this License may be served upon City by personal service, or by mailing the same by registered mail in the United States Post Office, postage thereon fully prepaid and directed to the City as follows:

Parks and Recreation Department    Ed Guzman
323 Church Street                  5 Isabel Dr.
Santa Cruz, California 95060       Santa Cruz, CA  95062

and may likewise be served on Licensee by personal service or by mailing the same addressed to Licensee at the address above written. Either City or Licensee may change such address by notifying the other party in writing as to such new address as Licensee or City may desire used, and which same shall continue as the address until further written notice.

9

16.   WAIVERS.  The subsequent acceptance of license fees hereunder by City shall not be deemed a waiver of any preceding breach of any obligation hereunder by Licensee other than the failure to pay the particular license fees so accepted; and the waiver of any breach of any covenant or condition by City herein shall not constitute a waiver of any other breach regardless of knowledge thereof.  Any waiver by City of any breach must be in writing.

17.   RIGHTS AND OPTIONS.  Licensee's failure to exercise any right or option or privilege hereunder shall not thereafter preclude City from exercising any right, option, or privilege hereunder, and shall not be deemed a waiver of said right, option, or privilege.  Nor shall such a failure relieve Licensee from Licensee's obligation to perform each and every covenant and condition on Licensee's part to be performed hereunder or relieve it from liability for damages or any other remedy for Licensee's failure to perform or meet the obligations of this License.

18.   TERMINATION.  This License Agreement is terminable at the will of the City.

19.   REMEDIES.  If this License is terminated by City, City may recover from Licensee the worth, at the time of the termination, of the unpaid fees which had been earned but not paid at the time of the termination.  Should Licensee, upon demand by the City, fail to pay said fees, Licensor may withhold the amount of said fees owed but unpaid from Licensee's security deposit.

20.   ATTORNEY'S FEES.  In the event that either party hereto shall commence any legal action or proceeding, including an action for declaratory relief, against the other by reason of the alleged failure of the other to perform or keep any term, covenant, or condition of this License by him to be performed or kept, the party prevailing in said action or proceeding shall be entitled to recover, in addition to his court costs, reasonable attorney fees to be fixed by the court, and such recovery shall include court costs and attorney fees on appeal, if any.  As used herein, "the party prevailing" means the party in whose favor final judgment is rendered.

21.  <u>RULES AND REGULATIONS</u>.  Licensee acknowledges that this License is for operation on Cowell Beach and under the exclusive control of the City of Santa Cruz.  Licensee further acknowledges that the paramount duty of the City of Santa Cruz is to maintain the Beach in good condition. Licensee hereby agrees to abide by all laws, ordinances, directives, rules and regulations promulgated by the City Council of the City of Santa Cruz now existing or hereafter made for the government, management, maintenance and operation of said Beach including such directives as to usage of said Beach as may be promulgated by the officers or representatives of the City of Santa Cruz in their official or departmental capacity.  Licensee further agrees that such directives, rules, regulations, ordinances and conditions as may be imposed by the City of Santa Cruz through its City Council, administrative officers, department heads or duly authorized representatives in emergency situations shall be subject to immediate compliance without question or qualification as to the validity or reasonableness thereof by Licensee.

22.  <u>MISCELLANEOUS</u>.

(A)  The covenants and agreements contained in this License shall be binding upon the parties hereto and upon their respective heirs, executors and successors.

(B)  Time is of the essence with regard to each and every provision of this License agreement.

(C)  If Licensee is a corporation, Licensee shall deliver to City upon execution of this License a certified copy of a resolution of its Board of Directors authorizing the execution of this License and naming the officers that are authorized to execute this License on behalf of Licensee.

(D)  This License shall be construed and interpreted in accordance with the laws of the State of California.

11

IN WITNESS WHEREOF, the parties hereto have executed this License Agreement the day and year first herein written.

CITY OF SANTA CRUZ,
A Municipal Corporation

By _____
Asst. City Manager, "City"

ED GUZMAN

By _____
Ed Guzman

APPROVED AS TO FORM:

_____ 1-2-02
City Attorney

P:\pkad\cs\beach\Cowell Beach Concession Agmt.doc

12