1   KATE WELLS, SB# 107051
    2600 Fresno Street
2   Santa Cruz, California 95062
    Telephone: (831) 479-4475
3   Facsimile: (831) 479-4476
    Email Address: lioness@got.net
4
    DAVID K. MEYBERG, SB# 236636
5   223 Walnut Avenue, Suite D
    Santa Cruz, California 95060
6   Telephone: (831) 469-4509
    Facsimile: (831) 469-4509
7   Email Address: david_meyberg@hotmail.com

8   Attorney for Plaintiffs, DYLAN GREINER, individually and dba SANTA CRUZ SURF
    SCHOOL, ALIJAH K. CROWELL, DAVID M. AVARY
9

10              **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                      **E-FILING CASE**

13  DYLAN GREINER, individually and         )   **CASE NO.  C07 02523 RS**
    dba SANTA CRUZ SURF SCHOOL;              )
14  ALIJAH K. CROWELL;  DAVID M.             )   **PLAINTIFFS' MEMORANDUM**
    AVARY;                                   )   **OF POINTS AND AUTHORITIES**
15                                           )   **IN OPPOSITION TO CITY**
        Plaintiffs,                          )   **DEFENDANTS' MOTION TO**
16                                           )   **DISMISS**
            vs.                              )
17                                           )
    CITY OF SANTA CRUZ; OFFICER              )
18  JOHN ALEXIOU; DANETTEE                   )
    SHOEMAKER; CAROL SCURICH;                )
19  JOHN BARISONE; ED GUZMAN,                )
    CLUB ED, a California Corp.; and         )   **Date: December 19, 2007**
20  DOES ONE THROUGH TEN,                    )   **Time:   9:30 a.m.**
                                             )   **Courtroom: 4, Fifth Floor**
21      Defendants.                          )   **Honorable Richard Seeborg**
    _____ )

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**I.  INTRODUCTION**................................................................................................  **1**

**II.  FACTUAL ALLEGATIONS**................................................................................  **1**

**III.  LEGAL STANDARDS**....................................................................................  3

**IV.  ARGUMENT**..................................................................................................  **5**

    **A.  First Amendment Claims** ..........................................................................  **5**

    **B.  Constitutionality of the Newly Enacted Ordinance**....................................  **7**

    **C.  Plaintiffs State Facts Sufficient to Claim Fourth, Fifth**

        **and Fourteenth Amendment Violations**.................................................  **10**

        **1.  Probable Cause** ...............................................................................  **10**

    **D.  The Individual Defendants Are Not Entitled to Qualified Immunity**........  **12**

        **1.  First Amendment Claims** ................................................................  **12**

        **2. Fourth, Fifth and Fourteenth Amendment Claims**...........................  **13**

        **3.  Municipal Liability**..........................................................................  **13**

        **4.  The "Clearly Established" Standard**................................................  **14**

    **E.  California Constitutional Violations**...........................................................  **15**

    **F.   Declaratory and Injunctive Relief Claims** ................................................  **15**

    **G.   More Definite Statement is Not Necessary**................................................  **15**

**V.  CONCLUSION**................................................................................................  **16**

1

**TABLE OF AUTHORITIES**

2

<u>**Cases**</u>                                                                 <u>**Page**</u>

3    *Blackburn v. Marshall*, 42 F. 3d 925 (5th Cir. 1995)..............................................  5,13

4    *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) ........................  5

5    *Buchler v. United States*, 384 F.Supp. 709 (E.D. Cal. 1974) ........................................  4

6    *Carpenter v. Nutter,* 127 Cal. 61, 59 P. 301(1899)......................................................  11

7    *Conley v. Gibson*, 355 U.S. 41 (1957)........................................................................  4

8    *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126,
9    70 L.Ed. 322 (1926)........................................................................................  10

     *Foman v. Davis*, 371 U.S. 178, 182 (1962)..................................................................  5
10
     *Freeman v. Blair*, 862 F.2d 1330 (8th Cir. 1988)..................................................  5, 13
11
     *Gibson v. United States*, 781 F. 2d 1334 (9th Cir. 1986)..................................................  12
12

13   <u>*Grayned v. City of Rockford,* 408 U.S. 104</u>, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)........  9

14   *Hague v. CIO,* 307 U.S. 496 (1939)............................................................................  12

15   *Harlow v. Fitzgerald*, 457 U.S. 800, 818.....................................................................  13

16
     *Heck v. Humphrey,* (1994) 512 U.S. 477......................................................................  11
17
     *Hemet v. Benigni,* 879 F.2d 473 (9th Cir, 1989) ......................................................  10, 13
18
     *Hrubec v. National R.R. Passenger Corp*, 981 F.2d 962 (7th Cir. 1992).....................  3
19
     *Kinney v. Lenon,* 447 F.2d 596 (9th Cir. 1971)................................................................  5
20
     *Kolender v. Lawson,* (1983) 461 U.S. 352....................................................................  9
21
     *Leslie v. Ingram,* 686 F. 2d 1533 (11th Cir. 1986)..................................................  5, 13
22
     *Lewis v. Casey,*  518 U.S. 343 (1996)........................................................................  4
23
     *Lum v. Jensen*, 876 F.2d 1385, 1386 (9th Cir. 1989), cert. denied, 102 S. Ct.
24   2727, 2738, 73 L.Ed.2d 951 (1990).............................................................................  13

25   *Mackinney v. Neilsen ,* 69 F. 3d 1002 1007 (9th Cir. 1995)......................................  5, 12

26   *McBride v. Village of Michiana*, 100 F.3d 457 (6th Cir. 1996)..................................  5, 12

27   *.Neitzke v. Williams*, 490 U.S. 319 (1989)........................................................  4

*Freeman v. City of Santa Ana,* 68 F.3d 1180 (9th Cir. 1995)............................................  10, 13

28

1  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) .................................................... 5

2  *Palmerin v. City of Riverside*, 794 F.2d 1409, 1415 (9th Cir. 1986)  ........................... 13

3   *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).. 9

4  *Pembauer v. City of Cincinnati,* 475 U.S. 469 (1986) ....................................................... 13

5  *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987) ........................................................ 5

6  *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208 (9th Cir. 1957)........................ 4

7  *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .................................................................. 13

8  *Romero v. Kitsap County*, 931 F.2d 624,627 (9th Cir. 1991)............................................ 13

9  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)................................................................... 3

10  *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); ...................... 9

11  *Thomas W. Garland, Inc. v. St. Louis*, 596 F.2d 784, (8th Cir. 1979)
cert den 444 U.S. 899......................................................................................................... 4

12  *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981)............................. 4

13  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ................................... 4

14  *Village of Hoffman Estates v. Flipside,* (1982) 455 U.S. 489, 494 ................................. 9

15  *Wood v. Ostrander*, 879 F.2d 583 (9th Cir 1989)................................................................ 15

1

2

## I. <u>INTRODUCTION</u>

3      Defendants have filed a motion to dismiss alleging that the plaintiffs' First Amended complaint

4 (FAC) should be dismissed in that    (1) plaintiffs fail to state a cause of action for violation of their

5 rights under the First, Fourth, Fifth and Fourteenth amendments to the U.S. Constitution; (2) the

6 CITY defendants are entitled to qualified immunity; (3) plaintiffs fail to state a cause of action under

7 Article 10, Section 3 of the California Constitution; (4) plaintiffs fail to state a cause of action for

8 malicious prosecution; (5) plaintiffs fail to state a cause of action for violation of the Sherman Antitrust

9 Act, California Business and Professions Code Section 17200, et seq., and the common law of unfair

10 competition; (6) plaintiffs fail to state a cause of action for declaratory and injunctive relief.

11 Additionally, defendants allege that, in the alternative, the FAC suffers from insufficient allegations

12 requiring a more definite statement under FRCP 12(e).  Plaintiffs refute each of defendants allegations

13 of deficiency regarding the FAC.

14

## II. <u>FACTUAL ALLEGATIONS</u>[1]

15      Plaintiffs were engaged in providing surfing lessons to individuals in the ocean off of a public

16 beach in Santa Cruz commonly known as Cowell's beach.  Plaintiffs were at all times properly

17 licensed and insured to carry out such activity.  In June 2005, the CITY and officer ALEXIOU began

18 a campaign of public harassment of the plaintiffs by, among other things, demanding payment for

19 access across the public beach to the ocean, denial of access to the beach, and threats of citation.

20 Plaintiffs, through their attorney lodged a formal complaint with the city on September 7, 2005

21 demanding that the harassment stop.  The CITY responded by issuing a citation to CROWELL for

22 violation of Santa Cruz Municipal Code § 13.10.010.[2]

23

---

24      [1] See FAC pages 3-8.

25      [2]SCMC § 13.10.010: "No person shall sell any goods, food,

26 beverages or any other thing in any public park or on any public beach under the jurisdiction of the department of parks and

27 recreation, unless authorized by permit issued pursuant to this chapter and unless in conformity with the terms and conditions of

28 such permit."

1      Plaintiffs, through their attorney lodged a second complaint against the CITY claiming that the

2  issuance of the citation was further harassment and stating that the code section cited by the CITY

3  clearly did not apply to the conduct of the plaintiffs.  The CITY unreasonably delayed in presenting

4  the citations to the court for prosecution and did not do so until after repeated demands to the CITY

5  attorney - plaintiffs were anxious not only to prove their innocence, but to stop the still ongoing

6  harassment by the CITY.   The CITY's agents continued to verbally threaten and harass the plaintiffs

7  throughout the court proceedings and issued another citation to GREINER on April 11, 2006, while

8  the court proceedings were still pending on the first citation.  Plaintiffs have documented more than 45

9  instances of harassment by the CITY.

10      While the traffic referee initially found CROWELL guilty of violating SCMC § 13.10.010, a

11  three judge Superior Court appellate panel reversed the conviction on August 17, 2006, and warned

12  the CITY attorney at the hearing that it was clearly unlawful to cite individuals under the ordinance for

13  such conduct and that the ordinance on its face did not extend to CROWELL's activities of providing

14  surf lessons in the ocean.  The CITY thereafter dismissed the citation against GREINER.

15      On April 10, 2007 the CITY repealed the former ordinance and replaced it with the

16  following:

17  **13.10.010 - COMMERCIAL ENTERPRISES AND SALES IN PUBLIC PARKS AND**

18  **BEACHES.**

19      In City parks and on City beaches, including all waters for
    which the City has law enforcement authority, jurisdiction

20      and lifeguarding responsibility, no person shall solicit, sell,
    hawk, or peddle any goods, wares, merchandise, services,

21      liquids, or edibles for human consumption, except as permitted
    by the City.  This prohibition includes sales activities that utilize

22      park and beach property or facilities to complete the terms of sale
    or provide a service as a result of the sale or that affect park or

23      beach operations, facility use or visitor safety.  This prohibition
    also includes sales activities which encroach on the sales rights

24      of a vendor authorized to sell such products or services pursuant
    to a concession contract with the City.

25

26      Pursuant to the new ordinance, plaintiffs, in order to cross the public beach and teach surfing

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28

1  in the ocean are required to among other things:  1) pay an additional $500 (over and above the

2  normal business license fees); 2) purchase and maintain insurance (which plaintiffs already have); 3)

3  have their students wear brightly colored shirts as designated by the CITY; 4) limit the number of

4  students per instructor; 5) limit the total number of students in the water; and 6) use certain designated

5  surfboards.  The requirements are entirely under the control and unfettered discretion of CITY agents

6  SCURICH and SHOEMAKER.  Additionally, the new ordinance specifically protects the CITY's

7  franchisee, Club Ed, from competition and exempts Club Ed from the requirements listed above. As a

8  result, if Club Ed opts to have the maximum number of students in the water as allowed by the

9  ordinance, then no other surf school, including SCSS, would be able to carry out their business

10  thereby creating a monopoly for Club Ed.

11      Almost immediately after the new ordinance was enacted, GREINER was cited by the CITY.

12  Said citation has not yet been submitted to the court by the CITY.

13      As a result of the foregoing, plaintiffs have suffered emotional, physical damages as well as

14  damages to their reputation and to their business.

15  ### III.  LEGAL STANDARDS

16      Under Federal Rule of Civil Procedure 12(b)(6), the sufficiency of the complaint is tested

17  with regard to the applicable standard in FRCP 8(a), which requires simply that a pleading setting

18  forth a claim for relief contain a short and plain statement of the claim showing that the pleader is

19  entitled to relief.  A complaint which does not recount all relevant facts or recite the law should not

20  necessarily be dismissed.  *Hrubec v. National R.R. Passenger Corp*, 981 F.2d 962 (7th Cir.

21  1992).

22      The question presented by a motion to dismiss is not whether the plaintiff will prevail in the

23  action, but whether the plaintiff is entitled to offer evidence in support of the claim. *Scheuer v.*

24  *Rhodes*, 416 U.S. 232, 236 (1974).  If a plaintiff colorably states facts which, if proven, would entitle

25  her to relief, a motion to dismiss for failure to state a claim should not be granted.

26      In answering this question, the Court must assume that the plaintiff's allegations are true,

27  including all facts alleged on information and belief, and must draw all reasonable inferences in the

28

1    plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face

2    of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to

3    develop the case at this stage of the proceedings. *United States v. City of Redwood*, 640 F.2d 963,

4    966 (9th Cir. 1981). On a motion to dismiss, a federal court presumes that general allegations

5    embrace those specific facts that are necessary to support the claim. *Lewis v. Casey*, 135 L.Ed 2d

6    606, 116 S.Ct. 2174 (1996).

7            FRCP 12(b)(6) motions are looked upon with disfavor by the courts and are granted

8    sparingly and with care. The main reason for this disfavor is the basic precept that the primary

9    objective of the law is to obtain a determination on the merits of the claim, and that accordingly, a

10   case should be tried on the proofs rather than on the pleadings. *Rennie & Laughlin, Inc. v. Chrysler

11   Corp.*, 242 F.2d 208 (9th Cir. 1957); *Buchler v. United States*, 384 F.Supp. 709 (E.D. Cal.

12   1974). As the court stated in *Rennie*, supra, there are other effective procedural devices which are

13   useful tools for the sifting of allegations and the determination of the legal sufficiency of a claim, such

14   as pretrial conferences, the discovery procedures, and motions for a more definite statement,

15   judgment on the pleadings and summary judgments. A complaint will not be dismissed merely

16   because the plaintiff's allegations do not support the particular legal theory she advances, since the

17   court is under a duty to examine the complaint to determine if the allegations provide a basis for relief

18   under any possible theory. *Thomas W. Garland, Inc. v. St. Louis*, 596 F.2d 784, (8th Cir. 1979)

19   cert den 444 U.S. 899. In light of the fact that FRCP 8(a)(2) merely requires a short and plain

20   statement of the claim, rather than specific facts detailing every allegation, mere vagueness or lack of

21   detail is not a ground for a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41 (1957). FRCP

22   12(b)(6) does not countenance dismissals based merely on a judge's disbelief of a complaint's factual

23   allegations, *Neitzke v. Williams*, 490 U.S. 319 (1989), nor is the failure to plead facts showing the

24   plaintiff's theory of liability grounds for dismissal since the defendant can serve interrogatories

25   requiring the plaintiff to particularize the theory of liability.

26           If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to

27   amend. In general, leave to amend is only denied if it is clear that amendment would be futile and

28

1  "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d

2  1446, 1448 (9th Cir. 1987) quoting *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th

3  Cir. 1980) (per curiam)); see *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987) (citing *Foman*

4  *v. Davis*, 371 U.S. 178, 182 (1962).  It is generally agreed that the plaintiff should be given a chance

5  to amend a complaint which fails to state a claim upon which relief can be granted. *Kinney v. Lenon,*

6  447 F.2d 596 (9th Cir. 1971); *Buchler*, supra.

7  ## IV.  ARGUMENT

8  ### A.  First Amendment Claims

9        Defendants in their brief at page 3, line 11-12 claim that plaintiffs acknowledge that they are

10  "engaged in teaching surfing lessons without a permit."  On the contrary, plaintiffs allege in the FAC

11  that they were properly licensed to carry out their activities.  Additionally, defendants claim that there

12  is not sufficient nexus between the filing of the complaints by plaintiffs and the issuance of the citations.

13  This is not a summary judgment motion.  Plaintiffs have alleged that the citations followed shortly after

14  the complaints and that the citations were filed in retaliation for the complaints.  Law enforcement

15  activities designed to retaliate against persons for criticizing government officials violate the First

16  Amendment.  This is true whether the action is an immediate arrest, a later prosecution or other

17  adverse action.  *Mackinney v. Neilsen* , 69 F. 3d 1002 1007 (9th Cir. 1995); *McBride v. Village of*

18  *Michiana*, 100 F.3d 457 (6th Cir. 1996); *Blackburn v. Marshall*, 42 F. 3d 925 (5th Cir. 1995);

19  *Leslie v. Ingram,* 686 F. 2d 1533 (11th Cir. 1986); *Freeman v. Blair*, 862 F.2d 1330 (8th Cir.

20  1988)

21        Under the legal standards of FRCP 8(a), such allegations are sufficient to pass muster at this

22  stage of the litigation as a violation of the plaintiffs' First Amendment rights.  Plaintiffs are not required

23  to provide proof of the causation nexus at this time and should be given the opportunity to conduct

24  discovery regarding the events in order to provide such proof.

25        The same is true of plaintiffs' allegations regarding the CITY's interference with their rights of

26  association and political activity.  The CITY selectively, intentionally and physically confronted and

27  wrongfully barred Plaintiffs' access to a public place where social and political issues are discussed

28

1   concerning the community, and more specifically, those within a subculture of the community known

2   as "surfers.  People who surf and congregate in the water socialize and network, exchange ideas and

3   share information of public concern and of concern to the surfers.

4       Prior to the issuance of the citations, the CITY was put on notice by Plaintiff's Counsel that

5   SCMC §13.10.010, the code under which the CITY threatened to cite plaintiffs, did not  restrict

6   Plaintiff's conduct. Specifically, a law prohibiting the sale of goods on the beach does not apprise a

7   person of average intelligence that there exists a restriction from providing services, namely surfing

8   lessons, out in the ocean. Plaintiff obtained and possessed a valid business license from CITY and the

9   CITY knew they had an insufficient basis to cite plaintiffs as it was clear on its face that the ordinance

10  did not apply to the plaintiffs' conduct .

11      Plaintiffs did not violate SCMC §13.10.010 because the code section did not apply. No

12  permit was sought by Plaintiff because none was required under any applicable law. CITY's demand

13  of additional money from Plaintiff to access the public beach, was viewed by Plaintiff as

14  discriminatory, unjustified and tantamount to an extortion demand because Plaintiff was already in full

15  compliance with all laws. The CITY demanded payment from Plaintiff and imposed other restrictions

16  on Plaintiff which directly enhanced the value of CITY's vendor license. The CITY discriminated

17  against Plaintiffs by blocking Plaintiffs but allowing all other people access to the public beach and

18  ocean.

19

20      The citation issued to the CROWELL by the CITY was not upheld and the CITY

21  subsequently dismissed the second citation which had been issued to GREINER under SCMC

22  §13.10.010.  It was the unanimous decision of the 3 judge Superior Court panel hearing the appeal

23  that no reasonable person could believe that a code which prohibits the sale of goods on the beach

24  was violated by a person teaching surfing lessons in the ocean.

25      The result is that the CITY wrongfully denied Plaintiffs and their clients access to a public

26  park to engage in lawful activity, associate and communicate with others. A public park is afforded

27  the highest tier of protection. The CITY denied Plaintiffs their Constitutional rights by preventing them

28

PLAINTIFFS OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS
*Greiner, et al. v. City of Santa Cruz, et al.*  Case No. C07-2523-RS          6

from directly communicating important social and political information to colleagues and others who would be concerned to take up a position against the Santa Cruz City Government.  Plaintiffs desired to sit on their surfboards and spread their message in the water instead of standing on a soap box and voice their thoughts on land.

A surf break is a public venue and should be afforded the highest protections. Surfing is a cultural activity because it involves socializing and it is available to everyone, young and old.  Surfing issues are discussed out in the water. Plaintiff and their clients are entitled to congregate, assemble peacefully, contribute to the market place of ideas, debate issues in person, gather support and consensus for their cause and rally support to petition the government. CITY's charging money for surfing and selectively and illegally blocking access to the public surf break is important news. In fact, this issue was featured on several television news casts, was a front page story in the local news paper multiple times, was the topic of editorial sections and letters to the editor in the local news paper and the issues were debated regularly in the water. The CITY's denial of Plaintiffs' access across a public beach to congregate in the public waterway (the ocean) violates Plaintiff's First Amendment Constitutional rights.

### B.  Constitutionality of the Newly Enacted Ordinance

The CITY's revised ordinance is constitutionally infirm because it is unreasonably vague and impermissibly restricts a broad range of protected activity.  Additionally, it leaves unfettered discretion in the hands of SCURICH and SHOEMAKER as to who received a permit and how the permittee is allowed to conduct their activity.  Finally, the law specifically exempts Club Ed from the requirements with the probability that ultimately all other surfing lessons other than Club Ed's will be banned from Cowell's Beach.

Plaintiffs contend that the new ordinance is unconstitutionally vague because it is unclear what "sales activities" means. Does the CITY intend to include all sales transactions? Secondly, how will the CITY prove there is an "effect" on beach operations?  This criteria appears subjective and open

to selective interpretation.  Furthermore, how will the CITY show a net increase of use? What conduct need occur to arise to the point that it "encroaches" on the "sales rights" of a vendor?   If CITY arbitrarily modifies the "sales rights" of its vendor, is this a valid basis to halt long-time business operations of a competitor?   SCMC §13.10.010 as it applies to surf schools, is based on the assumption that CITY has the right to charge people money to access and use the ocean, a navigable waterway. Plaintiff disputes this notion.

        If SCMC §13.10.010 is interpreted broadly, it appears to be unconstitutionally overbroad because it regulates protected activity which falls under "facility use." To begin with, private ambulance companies who provide emergency medical services would not be allowed to enter a park or the beach to provide medical attention to the sick or injured without a special permit. SCMC §13.10.010 effectively bans one from discussing business transactions while surfing in the ocean or playing golf at the CITY's golf course. People can not discuss transactions for services such as golf lessons, swimming lessons or surfing lessons. Discussions are banned regarding the sale of tangible goods such as golf clubs, shirts, shorts and other clothes, boogie boards or surfboards or food or beverages because all of these items "encroach" on the "sales rights" of CITY vendors. Handicapped persons protected under the ADA would be affected as well. For example, a quadriplegic person would not be allowed to be wheeled down or off the beach access ramp by their care provider without a permit. A handicapped person soliciting services or desirous of something to eat or drink is prohibited from giving a person money to buy them food or a drink at any store off the beach (outside the park) and bring it back to them at the beach (or at the park) without a permit. Personal discussions or cell phone calls which involve business or sales are banned without a permit.   Sports rental stores and surf shops are not allowed to rent golf clubs, or surf recreation equipment for use at CITY parks, golf course or beaches without a permit. Baby sitters must obtain a permit to provide their service at the beach or in a park. A person could not agree to have another buy them lunch in exchange for some golf swing pointers at the CITY's driving range without a permit. Group home

1  counselors, elderly care providers, teachers with school children, sports coaches with classes, nature

2  class walkers, bird watching groups, yoga groups, meditation groups and even the hoola-hoop

3  recreation group would not be able to use the beach or parks without a permit. People would not be

4  allowed to teach others to swim in the ocean or the CITY's swimming pools without a permit.

5      The foregoing is only a partial list of all the activities that would require a permit under SCMC

6  §13.10.010. These activities are the traditional and long-standing uses and reasons people use public

7  parks and beaches. Reasonable people conducting such activities would have no idea that their

8  conduct requires a permit. If CITY intends to only cite only some individuals who arguably violate

9  SCMC §13.10.010, then it appears that the CITY will engage in discrimination and selective

10  enforcement.

11

12      In evaluating a facial challenge to a law, a federal court must, of course, consider any limiting

13  construction that a state court or enforcement agency has proffered.  *Village of Hoffman Estates v.*

14  *Flipside, Hoffman Estates*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

15  The CITY has offered no guidance as to which individuals, among those listed above, would be

16  required to procure a permit.

17      Our Constitution is designed to maximize individual freedoms within a framework of ordered

18  liberty. Statutory limitations on those freedoms are examined for substantive authority and content as

19  well as for definiteness or certainty of expression. See generally M. Bassiouni, Substantive Criminal

20  Law 53 (1978).  *Kolender v. Lawson,* (1983) 461 U.S. 352.  As generally stated, the void-for-

21  vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness

22  that ordinary people can understand what conduct is prohibited and in a manner that does not

23  encourage arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside,* 455

24  U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct.

25  1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33

26  L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31

27

28

L.Ed.2d 110 (1972); *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, courts have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith, supra,* 415 U.S. at 574, 94 S.Ct., at 1247-1248. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.,* at 575, 94 S.Ct., at 1248.

SCMC 13.10.010 as presently drafted, contains no standard for determining in what activity an individual must engage in order to require a permit and as such, the statute vests virtually complete discretion in the hands of the police to determine whether their conduct is covered by the law.   There is the very real probability for arbitrarily suppressing First Amendment liberties.

**C.  Plaintiffs State Facts Sufficient to Claim Fourth, Fifth and Fourteenth Amendment Violations**

The case law is well established that law enforcement activity conducted for harassment purposes subject officers, their superiors and the municipality to liability under the Fourth and Fourteenth Amendments.  *Hemet v. Benigni,* 879 F.2d 473 (9th Cir, 1989) and *Freeman v. City of Santa Ana,* 68 F.3d 1180 (9th Cir. 1995) Furthermore, a Section 1983 action based on harassment by police of a bar was proper and evidence of excessive and unreasonable police conduct intentionally directed toward bar owner to force him out of business was an infringement on his constitutional right to pursue an occupation under the Fifth Amendment as applied to the states by the Fourteenth Amendment. *Benigni , supra.*

**1.  Probable Cause**

Defendants make much of the fact that a traffic referee found CROWELL guilty of the charge.   It is a key issue that the appellate panel of Superior Court Judges found that the decision of

1    the referee was not only wrong, but that no reasonable person would have believed that the

2    ordinance as written applied to the activity of the plaintiffs herein.   In the case of *Heck v. Humphrey,*

3    (1994) 512 U.S. 477  the Supreme Court held that it is a prerequisite to bringing a Section 1983

4    action for violation of the Fourth Amendment that there be a final favorable determination of the court

5    proceeding in favor of the plaintiff.  The Court likens the action to that of a malicious prosecution

6    action:

7          "One element that must be alleged and proved in a malicious prosecution action is termination

8    of the prior criminal proceeding in favor of the accused. Prosser and Keeton, *supra,* at 874;

9    *Carpenter v. Nutter,* 127 Cal. 61, 59 P. 301(1899). This requirement 'avoids parallel litigation over

10   the issues of **probable cause** and guilt . . . and it precludes the possibility of the claimant *[sic]*

11   succeeding in the tort action after having been convicted in the underlying criminal prosecution, in

12   contravention of a strong judicial policy against the creation of two conflicting resolutions arising out

13   of the same or identical transaction.' 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts §

14   28:5, p. 24(1991)." (Emphasis added)

15

16         It is undisputed that the criminal prosecution was determined in plaintiffs' favor and therefore

17   there was no definitive finding of probable cause for the issuance of the citation.  Plaintiffs allege that

18   no reasonable officer would have believed that the ordinance under which plaintiffs were cited applied

19   to plaintiffs' conduct.  It was clear on its face.   There was no probable cause for the issuance of the

20   citations.

21         Plaintiffs allege that the citations were issued without probable cause or justification and for

22   the purpose of harassment and to deny plaintiffs their right to pursue their occupation in order to

23   protect their vendor, Club Ed, and to humiliate and embarrass plaintiffs in public and in front of their

24   students - making it appear (wrongfully) that plaintiffs were running an illegal business operation.

25         While defendants maintain that such enforcement is a valid exercise of their police power,

26   plaintiffs maintain that the law, in fact, makes the situation at the beach more dangerous than it was

27

28

before in that it forces beginning surfers to utilize other surf breaks that are a lot more rocky and difficult for them to maneuver.    The ordinance and the harassment of plaintiffs by defendants bear no rational relation to any legitimate governmental purpose and in fact have made the beaches less safe for swimmers and surfers.

### D.  The Individual Defendants Are Not Entitled to Qualified Immunity

As stated above, plaintiffs have stated a sufficient case for violation of plaintiffs' constitutional rights and plaintiffs maintain that the law was clearly established at the time of the violations.   While plaintiffs are aware that individual motivation is ordinarily not considered as part of a qualified immunity argument, it is their contention that there was total bad faith on the part of the individual defendants; that the defendants were fully aware that the ordinance did not apply to the plaintiffs' activities but went ahead and used the ordinance as part of a campaign of harassment against plaintiffs for the purpose of eliminating  plaintiffs' business.  Plaintiffs have never contended that the original ordinance was unconstitutional - only that the ordinance did not, on its face, even remotely cover the plaintiffs' activities.

### 1.  First Amendment Claims

Cases decided under the First Amendment have produced a wide divergence of opinion on the appropriate standard for reviewing immunity claims.  The courts have, however categorically rejected qualified immunity where the defendants violated First Amendment rights and attempted to argue that the manner in which the rights were violated (i.e., their specific conduct) had not previously been clearly proscribed.  Actions by the police which interfere with the free exercise of speech and association are subject to suit under Section 1983.  *Hague v. CIO,* 307 U.S. 496 (1939) and *Gibson v. United States*, 781 F. 2d 1334 (9th Cir. 1986)   Law enforcement activities designed to retaliate against persons for criticizing government officials violate the First Amendment.  This is true whether the action is an immediate arrest, a later prosecution or other adverse action.  *Mackinney v. Neilsen* , 69 F. 3d 1002 1007 (9th Cir. 1995); *McBride v. Village of Michiana*, 100 F.3d 457 (6th

Cir. 1996); *Blackburn v. Marshall*, 42 F. 3d 925 (5th Cir. 1995); *Leslie v. Ingram,* 686 F. 2d 1533 (11th Cir. 1986); *Freeman v. Blair*, 862 F.2d 1330 (8th Cir. 1988)   As such, the case law was well established at the time defendants committed the unlawful acts against plaintiffs.  It was likewise well established law that it is a violation of the First Amendment for a government official to retaliate against one who complains or petitions for redress of grievances. *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984).

### 2. Fourth, Fifth and Fourteenth Amendment Claims

The case law is also well established that law enforcement activity conducted for harassment purposes subject officers, their superiors and the municipality to liability under the Fourth and Fourteenth Amendments.  *Hemet v. Benigni,* 879 F.2d 473 (9th Cir, 1989) and *Freeman v. City of Santa Ana,* 68 F.3d 1180 (9th Cir. 1995)   Furthermore, a Section 1983 action based on harassment by police of a bar was proper and evidence of excessive and unreasonable police conduct intentionally directed toward bar owner to force him out of business was an infringement on his constitutional right to pursue an occupation under the Fifth Amendment as applied to the states by the Fourteenth Amendment. *Benigni , supra.*

### 3. Municipal Liability

There is evidence that the CITY ratified the actions of the individual defendants herein.  The CITY chose to submit the citations to the court for prosecution.  Municipal defendants are liable for constitutional violations even where the individual officers who committed them may be protected from liability and damages by qualified immunity.  *Palmerin v. City of Riverside*, 794 F.2d 1409, 1415 (9th Cir. 1986)

In *Monell* the Supreme Court declared: "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983.  In *Pembauer v. City of Cincinnati,* 475 U.S. 469 (1986) the Court concluded: We hold that

municipal liability under Section 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. The Court additionally held that even a single decision by a policymaking official could be the basis for liability under appropriate circumstances.

Where a decision is made by a non-policymaking subordinate, but an official with policymaking authority ratifies the subordinate's unconstitutional decision or action and the basis for it, liability may be imposed against the municipality.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, embraced an objective test under which government officials performing discretionary functions are shielded from liability for civil damages **only insofar as** their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The issues in the instant case are: Is it constitutionally permissible for defendants to retaliate against plaintiffs for the exercise of their first amendment rights in petitioning government officials for redress of their grievances? And is it constitutionally permissible for defendants to harass plaintiffs due to their political and associational conduct? Is it constitutionally permissible for defendants to carry out an overt series of harassing acts against plaintiffs with the intention of closing them down?

"Government officials who perform discretionary functions are protected from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lum v. Jensen*, 876 F.2d 1385, 1386 (9th Cir. 1989), cert. denied, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 951 (1990), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to determine whether an official is entitled to qualified immunity, a court must (1) identify the right allegedly violated, (2) determine whether the right was "clearly established", and (3) determine whether a reasonable official would have believed his or her conduct to be lawful. *Romero v. Kitsap County*, 931 F.2d 624,627 (9th Cir. 1991)

### 4. The "Clearly Established" Standard

A defendant official will not be protected by qualified immunity simply because the very action in question never has been held unlawful.  The Ninth Circuit states that, "In determining whether officials are entitled to qualified immunity, officials are charged with knowledge of constitutional developments at the time of the alleged constitutional violation, including all available case law [citation omitted].  A right can be clearly established even though there was no binding precedent in this circuit [citation omitted].  Absent binding precedent, we look to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established.  We also evaluate the likelihood that this circuit or the Supreme Court would have reached the same result as courts that had already considered the issue [citation omitted]." *Lum v. Jensen,* 876 F.2d 1385, 1387 (9th Cir. 1989), cert. denied 110 S. Ct. 867 (1990).  In *Wood v. Ostrander,* 879 F.2d 583 (9th Cir 1989) the court ruled that an opinion from a different court of appeals is sufficient to establish a legal principle if there is no direct precedent in the circuit.

**E.  California Constitutional Violations**

Plaintiffs' rights under the California Constitution are co-existent with those under the Federal Constitution.  All of the above-stated violations of the U.S. constitution are also violations of the California Constitution.

**F.  Declaratory and Injunctive Relief Claims**

Contrary to the assertions of Defendants, Plaintiffs have stated a case for declaratory relief including allegations of the lack of an adequate remedy at law as well as irreparable injury.  See FAC, paragraphs 48-50.

**G.  More Definite Statement is Not Necessary**

Plaintiffs maintain that there are sufficient and specific allegations contained in the FAC to meet the requirements of FRCP 8(a).  However, if the court disagrees, the plaintiffs will provide the defendants with a more definite statement subject to the limitation that no discovery has taken place as of now and many of the facts are in the hands of the defendants.

1

2                                    **V.  CONCLUSION**

3
         Plaintiffs respectfully request that the court deny defendants' motion to dismiss based on the
4
foregoing argument.  In the alternative, should the court find reason to dismiss the complaint in whole
5
or in part, that the plaintiffs be given the opportunity to amend the complaint to cure any deficiencies.
6

7

8

9

10

11

12

13

14

15   Dated: November 26, 2007            _____/s/_____

16                                       KATE WELLS
                                         Attorney for Plaintiffs, DYLAN GREINER,
17                                       individually and dba SANTA CRUZ SURF
                                         SCHOOL, ELIJAH K. CROWELL, DAVID M.
18                                       AVARY

19

20

21

22

23

24

25
     Dated: November 26, 2007            _____/s/_____
26                                       DAVID K. MEYBERG
                                         Attorney for Plaintiffs, DYLAN GREINER,
27                                       individually and dba SANTA CRUZ SURF

28
     PLAINTIFFS OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS
     *Greiner, et al. v. City of Santa Cruz, et al.*  Case No. C07-2523-RS              16

1                               SCHOOL, ELIJAH K. CROWELL, DAVID M.

2                               AVARY